UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

STEVEN J. PINCUS, an individual, on
behalf of himself and all others similarly situated,

      Plaintiff,

v.                                   **COMPLAINT - CLASS ACTION**

AMERICAN TRAFFIC SOLUTIONS, INC.,    **JURY TRIAL DEMANDED**
a Kansas corporation,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

1.    Plaintiff STEVEN J. PINCUS sues Defendant AMERICAN TRAFFIC SOLUTIONS, INC. (hereinafter "ATS"), and alleges that ATS, in conjunction with numerous municipalities and counties throughout Florida, has illegally appropriated millions of dollars from Floridians in violation of Florida law.  As explained herein, Plaintiff asserts that ATS's actions are unconscionable, fraudulent, and criminal, to such an extent that a significant proportion of Florida's citizenry have been directly damaged by ATS's conduct.  Accordingly, on behalf of the putative class, Plaintiff seeks to recover all funds unlawfully collected by ATS.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (i) at least one member of the putative class is a citizen of a state different from Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and (iii) none of the exceptions under that section apply to this action.

3.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the complained of acts or omissions giving rise to the claim occurred here.

## PARTIES

4.     Plaintiff Steven J. Pincus ("Plaintiff") is a natural person who at all times relevant to this action is and was a resident of Palm Beach County, FL.

5.     Defendant ATS is a Kansas corporation whose principal place of business is 1150 N. Alma School Rd., Mesa, AZ 85201, and whose registered agent for service of process in the State of Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

6.     ATS claims to be the market leader in road safety camera installations in North America, processing more than 1 million violations every year. Nationally, Defendant claims to have more than 3,200 installed red-light, speed and school bus stop arm safety cameras serving more than 30 million people.

7.     In addition to its red-light camera business, ATS is a "money services business" as defined by Fla. Stat. § 560.103(22) and is a "money transmitter" as defined by Fla. Stat. § 560.103(23).

## BACKGROUND OF THE MARK WANDALL TRAFFIC SAFETY ACT

8.     In Florida, the rules of the road are codified in a series of statutes collectively referred to as the Florida Motor Vehicle Code.  The Florida Motor Vehicle Code is located at Title 23 of the Florida Statutes, encompassing Florida Statutes Chapters 316 through 324.

9.     The Florida Motor Vehicle Code is intended to be a uniform law: "It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout

the state and its several counties and uniform traffic ordinances to apply in all municipalities. . . . It is unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter." Fla. Stat. § 316.002.

10.     In light of this, prior to 2010, it was unlawful for local governments in Florida to enact their own traffic laws, subject to very limited exceptions.

11.     In 2010, the Florida legislature passed the Mark Wandall Traffic Safety Act (the "Act"). The Act amended the Florida Motor Vehicle Code to enable municipalities and counties to operate their own so-called "photo-enforced" red light programs on their roadways. *See* Fla. Stat. § 316.0083.

12.     The Act incorporated a full framework for photo-enforced red light programs into the Motor Vehicle Code, establishing rules for the issuance of citations, review of disputed violations, payment of civil penalties, and other rules that must be observed by local governments availing themselves of such a program. *Id.*

13.     The Act also established the civil penalty for drivers photographed "running" a red light:

> Within 30 days after a violation, notification must be sent to the registered owner of the motor vehicle involved in the violation specifying the remedies available under s. 318.14 and that the violator must pay the penalty of $158 to the department, county, or municipality, or furnish an affidavit in accordance with paragraph (d), or request a hearing within 60 days following the date of the notification in order to avoid the issuance of a traffic citation. The notification must be sent by first-class mail. The mailing of the notice of violation constitutes notification.

Fla. Stat. § 316.0083(b)1.a.

14.    Notably, the Act specifically prohibits the payment of commissions to vendors who

implement such programs for municipalities:

> An individual may not receive a commission from any revenue collected from violations detected through the use of a traffic infraction detector. A manufacturer or vendor may not receive a fee or remuneration based upon the number of violations detected through the use of a traffic infraction detector.

§ 316.0083(b)4

15.    Following the Florida legislature's passage of the Act, many Florida municipalities

decided to implement their own photo-enforced red light programs, and most selected

Defendant ATS to be their exclusive vendor.

**NORTH MIAMI BEACH'S PHOTO-ENFORCED RED LIGHT PROGRAM**

16.    One such municipality was the City of North Miami Beach.  In 2010, in view of the

Act, the City of North Miami Beach executed an agreement with ATS to implement a

photo-enforced red light program.  This agreement, along with four (4) amendments

thereto, is attached hereto and incorporated herein as *Composite Exhibit A*.

(hereinafter the "Agreement").[1]

17.    The Agreement selected ATS as the exclusive vendor for the City of North Miami

Beach's photo-enforced red light program, responsible for all aspects of operating the

program, including installing and maintaining equipment, monitoring intersections,

issuing and mailing citations, processing payments, and more.  Operating the program

is almost entirely "hands-off" for the city, with the lion's share of work shifted to

ATS.

---

[1] The original version of the Agreement was executed in 2008, despite the flagrant illegality of the program at the time.  *See, e.g., Masone v. City of Aventura*, 147 So. 3d 492 (Fla. 2014).  Following the legislature's passage of the Act in 2010, the Agreement was substantially amended in March 2013 to conform to the provisions of the Act.

18.     In August 2013, the City of North Miami Beach and ATS executed their "Second Amendment to Professional Services Agreement," amending the Agreement to change certain provisions of the photo-enforced red light program within the city.

19.     This second amendment to the Agreement specifies, in pertinent part, that "ATS is authorized to charge, collect and retain a convenience fee of up to 5% of the total dollar amount of each electronic payment processed.  Such convenience fees are paid by the violator." *See Composite Exhibit A-3*, Second Amendment to Professional Services Agreement.

20.     This so-called "convenience fee" is both a commission and an unlawful surcharge, both of which are expressly prohibited by the Florida Motor Vehicle Code, and the Act itself.

21.     ATS has illegally imposed and collected this 5% surcharge from Florida drivers on almost every single photo-enforced red light violation serviced by the company, amounting to millions upon millions of ill-gotten gains, notwithstanding the fact that ATS is paid for its services by the City of North Miami Beach in the amount of $4,750 per camera, per month.

**FACTUAL ALLEGATIONS AS TO PLAINTIFF STEVEN J. PINCUS**

22.     On or about February 17, 2018, images of Plaintiff's automobile were captured by one of ATS's red-light cameras.  Shortly thereafter, Plaintiff received in the United States mail a Notice of Violation allegedly issued by North Miami Beach.  A true and correct copy of this Notice of Violation is incorporated herein and attached hereto as *Exhibit B*.

23.  The Notice of Violation alleged that Plaintiff had run a red light, and demanded payment of a civil penalty in the amount of $158.00.

24.  The Notice of Violation encouraged online payment of the fine to one of ATS's websites, www.violationinfo.com, and required an additional "convenience fee" of $7.90 for the privilege of paying the fine online or by way of a toll-free number; a fee that is retained by Defendant.

25.  The Notice of Violation also included a form to mail in payment of the fee—again, not to an address in North Miami Beach or even in Florida— but to a post office box in Cincinnati, Ohio, leased to ATS.

26.  Even though the Notice of Violation was purportedly issued by the City of North Miami Beach, he was instructed **not** to send payment to the Clerk of the Court.

27.  The only option to pay the fine is to pay Defendant via online payment, payment by phone, or payment by mail. No payments directly to the City of North Miami Beach are allowed, and cash is not accepted.

28.  On April 23, 2018, Plaintiff, using his personal Discover card, paid the civil penalty and $7.90 "convenience fee," which appeared on Plaintiff's credit card activity log as two separate transactions, bringing the total penalty to $165.90.

## CLASS ACTION ALLEGATIONS

29.  This action is brought on behalf of the following class:

> (i) all persons (ii) who were issued a Notice of Violation by American Traffic Solutions, Inc. (iii) for an alleged photo-enforced red light violation in Florida (iv) who subsequently paid the $158 civil penalty along with an additional sum to American Traffic Solutions, Inc. (v) during the four-year period prior to the filing of the complaint in this action through the date of certification.

30.    Plaintiff alleges on information and belief that the class is so numerous that joinder of all members of the class is impractical. Defendant operates in numerous jurisdictions across the State of Florida and, upon information and belief is responsible for approximately 75% of the nearly 5.4 million red-light camera violations issued in the last five years, approximately 3.7 million of which are believed to have paid a "convenience fee" along with their fine.[2]

31.    Plaintiff and the putative class are not asserting a private cause of action under either Fla. Stat. §§ 316.0083, 318.121, or 560.204; instead he is asserting a common law cause of action on behalf of said class for unjust enrichment and/or money had and received, an element of which is a violation(s) of the statute itself.[3]

32.    There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members. The common factual and/or legal issues common to each class member are as follows:

(a)    whether Defendant has received a commission from revenue collected from violations detected through the use of a traffic infraction detector, per Fla. Stat. § 316.0083(b)4;

---

[2]  Source:  http://www.flhsmv.gov/pdf/cabinetreports/redlightcameraanalysis2017.pdf  (Last visited May 2, 2018).

[3]  Under Florida law, "[w]hether a statutory remedy is exclusive or merely cumulative depends upon the legislative intent as manifested in the language of the statute." *Thornber v. City of Ft. Walton Beach*, 568 So.2d 914, 918 (Fla. 1990). "Even where the legislature acts in a particular area, the common law remains in effect in that area unless the statute specifically says otherwise." *State v. Ashley*, 701 So.2d 338, 341 (Fla.1997); *see also Essex Ins. Co. v. Zota*, 985 So.2d 1036, 1048 (Fla. 2008) ("A statute....designed to change the common law rule must speak in clear, unequivocal terms, for the presumption is that no change in the common law is intended unless the statute is explicit in this regard." (quoting *Carlile v. Game & Fresh Water Fish Comm'n*, 354 So.2d 362, 364 (Fla. 1977)).

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1323 (S.D. Fla. 2017)

      (b)     whether Defendant has collected unlawful additional fees, fines, surcharges, or costs other than the court costs and surcharges assessed under Fla. Stat § 318.18(11), (13), (18), (19), and (22), per Fla. Stat. § 318.121.

      (c)     whether Defendant is operating as an unlicensed money transmitting business in contravention of Fla. Stat. § 560.204;

      (d)     whether Defendant should be enjoined from engaging in such conduct in the future;

      (e)     whether Defendant should be required to return all "convenience fees" collected while operating as an unlicensed money transmitting business in contravention of Fla. Stat. § 560.204.

33.    Plaintiff's claim is typical of those of the class members. All claims are based on the same facts and legal theories.

34.    Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful anti-consumer practices.

35.    Neither Plaintiff nor his counsel has any interests that might cause them not to vigorously pursue this action.

36.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

      a.     The questions of law or fact common to the members of the class predominate over any questions affecting an individual member;

      b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

37.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate relief with respect to the class as a whole. Injunctive relief is appropriate and necessary to cause the illegal surcharges to stop.

38.     Plaintiff requests certification of a hybrid class pursuant to both Rule 23(b)(3), for monetary damages and Rule 23(b)(2) for injunctive relief.

**COUNT I**
**UNJUST ENRICHMENT**
**FOR VIOLATION OF FLA. STAT. § 316.0083(b)4**

39.     Plaintiff incorporates paragraphs 1 through 38 as if set forth herein.

40.     Fla. Stat. § 316.0083(b)4 states that "[a]n individual may not receive a commission from any revenue collected from violations detected through the use of a traffic infraction detector. A manufacturer or vendor may not receive a fee or remuneration based upon the number of violations detected through the use of a traffic infraction detector."

41.     The 5% "convenience fee" extracted by ATS from Plaintiff and the putative class is an illegal "commission."

42.     The 5% "convenience fee" extracted by ATS from Plaintiff and the putative class is also an illegal "fee or remuneration based upon the number of violations detected through the use of a traffic infraction detector."

43.     Under Florida law, a claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citations and quotations omitted).

44.     The Plaintiff conferred a monetary benefit on the Defendant, some or all of which was voluntarily retained by Defendant.

45.     Because Defendant collected the money in violation of law, it would be unequitable

for Defendant to retain it.

46.     At least one other Court in this District has already concluded that ATS's activities

can support an unjust enrichment claim:

> The enrichment and the equitable components of the Plaintiffs'
> claim are deeply intertwined: the Vendors were enriched both
> by the Plaintiffs who paid a convenience fee to satisfy their
> fines and by the Local Governments that contracted with the
> Vendors to implement and administer red light ticketing
> programs.

*Parker v. American Traffic Solutions, Inc.*, No. 14-CIV-24010-MORENO

(S.D. Fla. Aug. 10, 2015).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of

the class, and against Defendant American Traffic Solutions, Inc. for:

(a)     An order certifying this case to proceed as a class action;

(b)     An order directing Defendant to disgorge their ill-gotten monies

obtained from the putative class;

(c)     Reasonable attorney's fees and costs; and

(d)     Such further relief as this Court may deem appropriate.

## COUNT II
## UNJUST ENRICHMENT
## FOR VIOLATION OF FLA. STAT. § 318.121

47.     Plaintiff incorporates paragraphs 1 through 38 as if set forth herein.

48.     Fla. Stat. § 318.121 of the Motor Vehicle Code states that "Notwithstanding any

general or special law, or municipal or county ordinance, additional fees, fines,

surcharges, or costs other than the court costs and surcharges assessed under

s. 318.18(11), (13), (18), (19), and (22) may not be added to the civil traffic penalties assessed under this chapter."

49.   The 5% "convenience fee" extracted by ATS from Plaintiff and the putative class is an illegal additional fee, fine, surcharge, or cost, as prohibited by § 318.121 of the Florida Motor Vehicle Code.

50.   Under Florida law, a claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citations and quotations omitted).

51.   The Plaintiff conferred a monetary benefit on the Defendant, some or all of which was voluntarily retained by Defendant.

52.   Because Defendant collected the money in violation of law, it would be unequitable for Defendant to retain it.

53.   At least one other Court in this District has already concluded that ATS's activities can support an unjust enrichment claim:

> The enrichment and the equitable components of the Plaintiffs' claim are deeply intertwined: the Vendors were enriched both by the Plaintiffs who paid a convenience fee to satisfy their fines and by the Local Governments that contracted with the Vendors to implement and administer red light ticketing programs.

*Parker v. American Traffic Solutions, Inc.*, No. 14-CIV-24010-MORENO (S.D. Fla. Aug. 10, 2015).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, and against Defendant American Traffic Solutions, Inc. for:

11

(a)      An order certifying this case to proceed as a class action;

(b)      An order directing Defendant to disgorge their ill-gotten monies obtained from the putative class;

(c)      Reasonable attorney's fees and costs; and

(d)      Such further relief as this Court may deem appropriate.

**COUNT III**
**UNJUST ENRICHMENT**
**FOR VIOLATION OF FLA. STAT. § 560.204**

54.    Plaintiff incorporates paragraphs 1 through 38 as if set forth herein.

55.    Fla. Stat. Ch. 560 regulates the activity of "Money Services Businesses" in the State of Florida, including "Money Transmitters" such as the Defendant.

56.    A "Money Transmitter" is "a corporation, limited liability company, limited liability partnership, or foreign entity qualified to do business in this state which receives currency, monetary value, or payment instruments for the purpose of transmitting the same by any means, including transmission by wire, facsimile, electronic transfer, courier, the Internet, or through bill payment services or other businesses that facilitate such transfer within this country, or to or from this country." Fla. Stat. § 560.103(23).

57.    Fla. Stat. § 560.204(1) states that, unless exempted, "a person may not engage in, or in any manner advertise that they engage in, the selling or issuing of payment instruments or in the activity of a money transmitter, for compensation, without first obtaining a license under this part. For purposes of this section, 'compensation' includes profit or loss on the exchange of currency."

58.     Florida imposes considerable requirements on money transmitters seeking a license, including proof of minimum net worth of up to $2 million, a surety bond of up to $2 million, annual financial audit reports, significant record keeping requirements, and other conditions.  Fla. Stat. § 560.203 *et seq.*

59.     Despite these requirements, Defendant ATS conducts a large-scale money transmitter business without a Florida license.

60.     Members of the putative class conferred a benefit on Defendant, to wit: payment of compensation to Defendant in exchange for money transmission services.

61.     Defendant had knowledge of the benefit, in that the Defendant itself collected its fee from the putative class members.

62.     Defendant accepted and retained the benefit conferred.

63.     The circumstances are such that it would be inequitable for the Defendant to retain its compensation, as Defendant was not a licensed money transmitter as required by Fla. Stat. § 560.203.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, and against Defendant American Traffic Solutions, Inc. for:

(a)     An order certifying this case to proceed as a class action;

(b)     An order directing Defendant to disgorge their ill-gotten monies obtained from the putative class;

(c)     Reasonable attorney's fees and costs; and

(d)     Such further relief as this Court may deem appropriate.

**JURY DEMAND**

64.     Plaintiff demands trial by jury.

Dated: June 29, 2018.

BRET L. LUSSKIN, Esq.
*Attorney for Plaintiff*
20803 Biscayne Blvd., Ste 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

By:   /s/ Bret L. Lusskin, Esq.
      Bret L. Lusskin, Esq.
      Florida Bar No. 28069

KEITH J. KEOGH, Esq.
*Attorney for Plaintiff*
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
Keoghlaw.com
Telephone: (312) 726-1092
Facsimile: (312)726-1093
Keith@Keoghlaw.com

By:   /s/ Keith J. Keogh, Esq.
      Keith J. Keogh, Esq.
      Florida Bar No. 126335

SCOTT D. OWENS, ESQ.
*Attorney for Plaintiff*
3800 S. Ocean Dr., Suite 235
Hollywood, Florida 33019
Telephone:  954-589-0588
Facsimile:  954-337-0666
scott@scottdowens.com

By:   /s/ Scott D. Owens, Esq.
      Scott D. Owens, Esq.
      Florida Bar No. 0597651

14