**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No.: 9:18-cv-80864-MIDDLEBROOKS/BRANNON

STEVEN J. PINCUS, an individual, on
behalf of himself and all others similarly
situated,

      Plaintiff,

v.

AMERICAN TRAFFIC SOLUTIONS,
INC.,

      Defendant.

_____/

**DEFENDANT AMERICAN TRAFFIC SOLUTIONS, INC.'S**
**DISPOSITIVE MOTION TO DISMISS COMPLAINT**

Defendant American Traffic Solutions, Inc. moves to dismiss Plaintiff Steven J. Pincus's

Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively,

12(b)(6).

**I.     Background.**

The City of North Miami Beach, Florida ("the City") contracts with American Traffic

Solutions, Inc. ("ATS") for equipment and administrative services as part of the City's camera

safety program.[1] (Doc. # 1 ¶¶ 16-17); (Doc. # 1-1). ATS's cameras image potential violations at

intersections throughout the City. (Doc. # 1-1 at 37, ¶¶ 1.5, 1.10-1.11; 39, ¶¶ 1.23-1.24). Those

images are then transmitted to law enforcement so they can make a probable cause decision. (*Id.*

_____

[1]     Although ATS and the City first entered into their contractual relationship in 2008, (Doc.
# 1-1 at 3-34), the Contract was materially amended in March 2013 to comply with the Mark
Wandall Traffic Safety Act (*Id.* at 35). As such, ATS cites to the controlling iteration of the
Contract (*Id.* at 35-68), as amended (*Id.* at 102-04, 107).

at 40, ¶ 3.3; 46, ¶ 7.2; 57-65; 107, ¶ 1). If appropriate, law enforcement issues a notice of violation ("NOV"). (*Id.* at 107, ¶ 1) (noting that only the City determines whether to issue a NOV); *see also* (*Id.* at 40, ¶ 3.3) (dictating how ATS processes infractions). After an officer issues an NOV, ATS administratively processes that violation. This includes mailing NOVs and processing civil fine payments that violators submit to the City. (*Id.* at 46, ¶ 7.2; 58, ¶ 1.2.2). All payments made by violators are the property of the City. (*Id.* at 46, ¶ 7.2-7.3).[2]

There are three options by which violators can pay their civil fine: online, by phone, or mail. For online and phone payments, the Contract permits ATS to charge the violator a convenience fee up to 5% of the civil fine for using these payment methods. (*Id.* at 58, ¶ 1.1.11; 102, ¶ 2). There is no convenience fee if a violator elects to mail in his/her civil fine payment.

On February 17, 2018, a vehicle registered to Pincus drove through a red light at an intersection in the City in violation of sections 316.074(1) and 316.075(1)(c)1. (Doc. # 1-2). The NOV issued by the City informed Pincus of his $158 civil fine as the registered owner of the vehicle that committed the violation.[3] (Doc. # 1 at ¶¶ 22-23); (Doc. # 1-2 at 1). It also informed Pincus that he could pay the civil penalty or contest the NOV. (Doc. # 1-2). As to payment, the NOV advised Pincus he could "[p]ay with [his] Visa or MasterCard at www.Violationinfo.com" or he could "mail [his] check or money order with th[e] coupon to" the address listed on the coupon. (*Id.* at 1). If he elected the latter method, Pincus was to "[m]ake [his] check or money

---

[2]     The Florida Supreme Court recently held that the processes used in these programs comply with Florida law. *See Jimenez v. State*, --- So. 3d ---, No. SC16-1976, 2018 WL 2050000 (Fla. May 3, 2018) (approving *State ex rel. City of Aventura v. Jimenez*, 211 So. 3d 158 (Fla. 3d DCA 2016) and *City of Oldsmar v. Trinh*, 210 So. 3d 191 (Fla. 2d DCA 2016); upholding red-light camera program administered under contract between ATS and the City of Aventura; and disapproving *City of Hollywood v. Arem*, 154 So. 3d 359 (Fla. 4th DCA 2014)).
[3]     This is the amount to be assessed under section 316.0083(1)(b)3.b.

115431593.1

order payable to [the City]." (*Id.*). The methods of payment indicated in the NOV are the methods required under the Contract. (Doc. # 1-1 at 46, ¶ 7.2).

Notably, on the back side of the NOV, Pincus was expressly advised that "[t]here is a convenience/service fee for" online and telephonic payment. (Doc. # 1-2 at 2). There is no convenience fee for payment submitted by check or money order through the mail. (*Id.*).

On April 23, Pincus voluntarily paid the civil fine for his violation using his personal credit card. (Doc. # 1 ¶ 28). Consistent with the Contract and the express terms he was provided, Pincus was charged a separate 5% convenience fee, which equated to $7.90. (*Id.*). The civil fine and convenience fee appeared on Pincus's credit card statement as two separate transactions. (*Id.*). Pincus does not allege he was charged more than the amount he was told he would be charged if he elected to pay using his credit card. He does not allege that ATS did anything other than what the parties agreed it would do once Pincus elected to have ATS process his payment online.

Nonetheless, Pincus has now sued ATS in this putative class action after electing to pay his civil fine using one of the options that would trigger the exact convenience fee he was charged. (Doc. # 1). He labels Counts I-III as unjust enrichment claims. A closer review shows that each claim centers on an alleged underlying statutory violation, not on any allegation of wrongful conduct by ATS directly against Pincus. It is these alleged underlying statutory violations that Pincus attempts to use as the basis for the common law claim he actually asserts.

For the reasons below, Pincus's claims fail as a matter of law.

## II.   Legal Standard.

The Court must accept the well-pled allegations stated in the complaint as true, construe those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences

from the allegations in favor of the plaintiff. *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004); *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). However, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). In addition, the court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, "[t]he scope of review must be limited to the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). But "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (stating, "if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls" (citation omitted)).

III.    **The Complaint Should Be Dismissed.**

A.    **Pincus lacks standing because he has no injury caused by ATS.**

"'A plaintiff's standing to bring and maintain [a] lawsuit is a fundamental component of a federal court's subject matter jurisdiction.'" *Borg v. Phelan, Hallinan, Diamond & Jones, PLLC*, No. 8:16-cv-2070-T-33TWG, 2017 WL 2226649, at *2 (M.D. Fla. May 22, 2017) (citation omitted). "The 'triad of injury in fact, causation, and redressability constitutes the core of Article

III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.'" *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citation omitted). To satisfy the causation element, a plaintiff must show that "the injury is fairly traceable to conduct of the defendant." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003) (citations omitted).

When, as here, a motion to dismiss is a facial attack on the complaint, a court takes the allegations as true and looks to see if the plaintiff sufficiently alleged a basis for the court to exercise its subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (discussing the two forms of a motion under Rule 12(b)(1)).

The allegations in the Complaint fail to allege facts sufficient to meet the causation element. Pincus does not allege that he was charged the wrong amount or that the payment to satisfy his civil fine was mishandled, misdirected, or not applied. Given the allegations in the Complaint, it is hard to see how Pincus was injured by ATS at all.

Indeed, Pincus affirmatively alleges that *he* initiated the payment process to pay his civil fine online, despite express notice that doing so would cause him to incur a convenience fee. He was charged the exact amount he agreed to pay by initiating the online payment system. Pincus could have mailed in his payment and avoided the fee altogether, but he chose to incur the convenience fee he was charged. He paid his civil fine, satisfying his obligation to the City, and the convenience fee payment satisfied his obligation to ATS as disclosed in the NOV. Pincus has not sustained any injury caused by ATS; rather, the putative injury was caused by Pincus's own decision.

Pincus's citation to Judge Moreno's order on the motion to dismiss in *Parker v. American Traffic Solutions, Inc.*, No. 14-24010-CIV-MORENO, 2015 WL 4755175 (S.D. Fla. Aug. 10,

2015), (Doc. # 1 at ¶¶ 46, 53), does not alter this outcome. On July 11, Judge Moreno *sua sponte* dismissed the entire *Parker* class action upon his independent conclusion that the Florida Supreme Court's decision in *Jimenez* resolved the issues presented in that case. (Ex. A).[4] Thus, to the extent this Court even considers Pincus's citation to that order in support of his claim of injury, ATS notes that case has now been dismissed through a subsequent *sua sponte* order. Pincus has identified no injury caused by ATS.

Because Pincus has failed to allege facts demonstrating that ATS caused the injury he complains of, Pincus lacks standing to maintain this action. Therefore, the Court should dismiss the Complaint for lack of subject matter jurisdiction.

**B.     ATS does not receive a commission out of the revenue collected from red-light camera violations or a fee based on the number of violations detected.**

Pincus claims ATS was unjustly enriched because its collection of the $7.90 convenience fee violates section 316.0083(1)(b)4. That section prohibits a person from "receiv[ing] a commission from any revenue collected from violations detected through the use of a traffic infraction detector," and, specifically prohibits a manufacturer or vendor from "receiv[ing] a fee or remuneration *based upon the number of violations detected* through the use of a traffic infraction detector." Fla. Stat. § 316.0083(1)(b)4. (emphasis added). The statute specifically disconnects the compensation that vendors like ATS receive based on the services they perform (*i.e.*, the convenience fee) from other forms of compensation that might be received based on the number of violations their cameras detect. It has nothing to do with the convenience fee that Pincus voluntarily incurred on top of the civil fine that his red light violation triggered.

---

[4]     "[A] court may take notice of another court's order" to "recognize[e] the 'judicial act' that the order represents." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *see also Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. App'x 52, 53-54 (11th Cir. 2006) (holding that district court was not obliged to convert motion to dismiss into motion for summary judgment by taking judicial notice of public record).

ATS's contract with the City unambiguously provides that ATS is paid a flat fee per camera installed for the City. (Doc. # 1-1 at 46, ¶ 7.1; 103-04, ¶¶ 3, 5). The convenience fee Pincus paid when he elected to use his credit card to pay his civil fine is a separate charge that is not "based upon the number of violations detected" by the cameras. In fact, it has nothing do with the number of violations detected by the cameras. It is instead tied to only the subset of law violators: (1) whose violations are detected; (2) to whom law enforcement actually issues an NOV; and (3) who choose to pay the civil fine via credit card instead of avoiding the 5% convenience fee altogether by mailing in the payment. As the Florida Supreme Court noted in its review of the process utilized in these programs, there are many violators whose conduct may be detected, but for whatever reason, law enforcement decides not to issue an NOV. *See Jimenez*, 2018 WL 2050000, at *9 (rejecting petitioner's selective enforcement argument based in part on the recognition that a traffic enforcement officer may stop and cite one person, while not citing others doing the same activity).

At bottom, Pincus's effort to use section 316.0083(1)(b)4.'s prohibition on commissions paid out of the revenue collected from red-light camera violations or fees to a vendor based on the total number of detected violations has nothing to do with the convenience fee that Pincus was charged based on his voluntary election to pay his civil fine via credit card. The $7.90 charge is not a commission from revenue collected from violations detected through the City's use of ATS's red-light cameras, nor is that charge a fee based upon the number of violations detected through the City's use of ATS's red-light cameras.

Count I should accordingly be dismissed with prejudice.

C.   **Pincus's claim that the $7.90 charge violates Chapter 318 is not supported by Florida law.**

      i.      *Pincus's claim ignores the plain language of section 318.121.*

Pincus next claims in Count II that ATS has been unjustly enriched because the convenience fee he paid to use his credit card violates section 318.121. That section states that "[n]otwithstanding any general or special law, or municipal or county ordinance, additional fees, fines, surcharges, or costs . . . may not be added to the civil traffic penalties *assessed under this chapter.*" (emphasis added). Here again, Pincus misapprehends the plain language of Florida law.

The traditional method of enforcing a violation of sections 316.074(1) and 316.075(1)(c)1. is through sections 318.14(4)(a)1. and 318.18(15)(a)3. No other fee, fine, surcharge, or costs may be added to the penalty assessed under section 318.14, subject to a few exceptions not relevant here. Fla. Stat. § 318.121.

However, there is a second avenue for enforcement: photo enforcement. When, as here, enforcement of Florida's traffic laws is by photo enforcement, the municipality must travel under section 316.0083(1)(b) to issue NOVs and citations. *See* Fla. Stat. §§ 316.0076 (reserving regulation of the use of cameras for enforcing Chapter 316 to the state); 316.008(8) (state's authorization for a municipality to use traffic infraction detectors to enforce sections 316.074(1) and 316.075(1)(c)1.). The municipality's traffic enforcement officer is authorized to issue citations to violators under section 316.0083(1)(a). Violators cited under this section must pay a civil fine to the municipality. Fla. Stat. §§ 316.0083(1)(b)1.a., 316.0083(1)(b)3.b. That penalty is "assessed and collected" under section 316.0083. Fla. Stat. § 316.0083(1)(b)2.; *see also* Fla. Stat. § 316.00831 (noting that a municipality "impos[ing] a penalty under s. 316.0083(1)(b)" must

remit the funds as required under section 316.0083). If the violator does not pay, a "traffic citation issued under this section [316.0083] shall be issued." Fla. Stat. § 316.0083(1)(c)1.a.

Pincus alleges he received a photo-enforced violation. The face of his NOV assesses the fine under section 316.0083(1)(b). Section 318.121 therefore does not apply according to its plain, unambiguous terms. Indeed, section 318.121 applies only to "civil traffic penalties assessed under this chapter," *i.e.*, Chapter 318. Fla. Stat. § 318.121.

Although sections 316.0083 and Chapter 318 cross reference each other, this does not change the result. The legislature said what it said: section 318.121 applies to penalties assessed "under this chapter." As section 318.121's "assessed under this chapter" language is clear and unambiguous, "[t]he court may not add words to the statute," "[e]ven where [the] court is convinced that the legislature really meant and intended something not expressed in the phraseology of the act." *In re A.W.*, 816 So. 2d 1261, 1263-64 (Fla. 2d DCA 2002); *see also CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (stating, courts "must presume that [the legislature] said what it meant and meant what it said" (quotation omitted)).

In sum, section 318.121 applies to fines assessed under Chapter 318. Pincus was fined pursuant to section 316.00083(1)(b), not Chapter 318. Pincus's claim based on the alleged violation of section 318.121 fails as a matter of law.

ii.   *Even if section 318.121 applies, Pincus's convenience fee is not the type of charge prohibited by that section.*

Even assuming that section 318.121 does apply to Pincus's civil fine, his claim would still fail because the convenience fee is separate and apart from the $158 statutorily prescribed penalty. It does not fall within the additional fines, fees, and surcharges contemplated by the statute.

The fee that Pincus complains of is not the "civil traffic penalty" he was obligated to pay for his violation. It is not a fee imposed by the government like those discussed throughout Chapter 318. For example, section 318.18(1)(a) sets a $15 fine for pedestrian-related infractions, sections 318.18(5)(a), (c) set a $100 fine for failure to stop for a school bus plus an additional $65 fine, section 318.18(6) allows for a $100 fine plus court costs for parking illegally. Some counties may charge an additional $3 in court courts under section 318.18(13)(b), a municipality may impose an additional surcharge under section 318.18(13)(a), and a $12.50 administrative fee may be added under section 318.18(18). These are examples of additional government-imposed fine amounts that may be added to a base fine for a violation. The statute prohibits local governments from imposing additional amounts to the base fine prescribed by the state.

In contrast to those government-imposed fines, surcharges, and costs stands the convenience fee. Pincus imposed that fee upon himself by electing to use one of the two options to pay his civil traffic penalty that would trigger the very fee he was charged and paid. It is not part of the fine that the government imposed for running a red light. In fact, Pincus alleges the convenience fee showed up as a separate transaction on his credit card statement and not part of the transaction for his fine payment to the City. (Doc. # 1 at ¶ 28). The plain language of the NOV states that the convenience fee Pincus was charged was based on the amount of the civil traffic penalty, *i.e.*, the $158; it was not the civil penalty itself. Pincus ignores this distinction, but it is fatal to his claims.

At bottom, section 318.121 regulates what the government can add to the fines imposed for a violation. It does not apply to the section under which Pincus was cited for his violation. Nor does it apply to the separate convenience fee charged ATS to process Pincus's civil fine

115431593.1

payment on behalf of the City. Pincus voluntarily elected to incur that fee. Accordingly, his unjust enrichment claim concerning it should be dismissed with prejudice.

**D.     An action for unjust enrichment cannot be based on an alleged violation of section 560.204 and, alternatively, Count III fails to state a claim.**

For his final claim in Count III, Pincus alleges ATS is operating as an unlicensed money transmitter in violation of section 560.204. He further alleges that, because ATS is allegedly operating in violation of section 560.204, he should be refunded the $7.90 fee he incurred to pay his penalty online.[5] Pincus cannot maintain this claim for unjust enrichment as a matter of law. But even if the Court declines to follow the majority of decisions that say as much, Pincus has failed to allege facts sufficient to state a viable claim for relief.

> *i.     An action for unjust enrichment cannot be maintained by a private person based on an alleged violation of section 560.204.*

There is no private right of action for a violation of section 560.24. *Hucke v. Kubra Data Transfer Ltd.*, 160 F. Supp. 3d 1320, 1323-27 (S.D. Fla. 2015) (concluding that plaintiff may not bring unjust enrichment claim based on alleged violation of section 560.204); *see also Cross v. Point & Pay, LLC*, 274 F. Supp. 3d 1289, 1293-96 (M.D. Fla. 2017) (agreeing with *Hucke*). Pincus attempts to sidestep this issue by applying the unjust enrichment label to Count III. Although there is a split of authority as to whether Pincus can do this, the majority of decisions interpret Eleventh Circuit law to hold that he cannot. *Compare Hucke*, 160 F. Supp. 3d at 1323-27, and *Cross Point & Pay*, 274 F. Supp. 3d at 1293-96, *with Pincus v. Speedpay, Inc.*, 161 F. Supp. 3d 1150, 1154-56 (S.D. Fla. 2015) (concluding plaintiff may proceed with unjust enrichment claim despite the fact that section 560.204 does not create a private right of action).

---

[5]     ATS denies that it is a money transmitter under section 560.204, but moves to dismiss on other grounds as stated here.

115431593.1

ATS addresses these decisions in turn and, for the reasons explained, respectfully requests that the Court follow the majority of decisions that have analyzed this same issue.

a.     *The* Pincus *decision.*

In *Pincus*, Caryn Pincus alleged that she and her husband paid their utility bill through a pay-by-phone system and incurred a charge to do so. 161 F. Supp. 2d at 1153-54. They claimed that the company processing their pay-by-phone payments was operating as an unlicensed money transmitter in violation of section 560.204. Plaintiff sued for, among other things, unjust enrichment seeking a refund of the charge they paid to have their payment processed. *Id.* at 1152-53. Defendant moved to dismiss on the grounds that Chapter 560 did not provide for a private cause of action. *Id.* at 1153.

Citing *State Farm Fire & Casualty Co. v. Silver Star Health and Rehabilitation*, 739 F.3d 579 (11th Cir. 2013) (holding unjust enrichment claim could lie where the Florida Health Care Clinic Act, which expressly provides that charges for unlicensed services are unlawful and therefore non-compensable and unenforceable, was violated), the district court concluded that "Florida law permits a claim for unjust enrichment" where such claim is based on alleged violation of a statute. *Pincus*, 161 F. Supp. 3d at 1155. The court specifically declined to follow *Buell v. Direct General Insurance Agency, Inc.*, 267 Fed. App'x 907, 909 (11th Cir. 2008).

*Buell* held that a plaintiff may not "evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions of [a statute] by asserting common law claims based on such violations," 267 Fed. App'x at 909 (citing *Murphy v. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994)). According to the court in *Pincus*, *Buell* "overlooked" a crucial aspect of the Florida Supreme Court's opinion in *Murphy* and, therefore, was "inconsistent with" *Murphy* and *Silver Star. Pincus*, 161 F. Supp. 3d at 1156. For those reasons,

12

the district court in *Pincus* did not dismiss the unjust enrichment claims based on alleged violations of section 560.204.

b.    The Hucke *decision.*

In *Hucke*, another district court looked at materially similar facts and the same case law, but reached the opposite conclusion. The *Hucke* plaintiff paid his electric bill by using defendant's service, which imposed a surcharge for payments by credit card. 160 F. Supp. 3d at 1322. Plaintiff thereafter brought suit for unjust enrichment, among other claims. *Id.*

According to plaintiff, he was allowed to bring a common law claim for unjust enrichment because Florida case law stated "that, where the law requires licenses to conduct business, contracts by the unlicensed to perform licensed services are illegal and void." *Id.* at 1323. Defendant moved to dismiss, arguing plaintiff could not maintain a common law action based on an alleged violation of a statute that does not provide a private cause of action. *Id.* at 1322.

The motion to dismiss was referred for a report and recommendation. *Id.* at 1322. After extensive analysis, the magistrate judge concluded that "something more than just the violation of a statute is needed. . . . [T]here must be some indication that the regulatory violation also renders the underlying transaction void." *Id.* at 1323. Because Chapter 560 did not contain language showing the underlying transaction with the unlicensed money transmitter was void, the magistrate recommended the claim be dismissed. *Id.* 1322, 1324.

Plaintiff objected to the report and recommendation on the basis of *Pincus*. *Id.* at 1324. The district court overruled the objection and adopted the report and recommendation after reconciling *Silver Star* with *Buell*, both of which "actually 'show the importance of the underlying statute's language.'" *Id.* (alteration omitted). The court explained:

13

In *Silver Star*, the Eleventh Circuit allowed an insurance company to bring an unjust enrichment claim for money it paid to a medical clinic that was not properly licensed. Although the relevant statute, . . . did "not expressly refer to a judicial remedy, it provide[d] that '[a]ll charges or reimbursement claims made by or on behalf of a clinic that . . . is not so licensed . . . are unlawful charges, and therefore are noncompensable and unenforceable.'" In *Buell*, the Eleventh Circuit affirmed the dismissal of plaintiff's claims for money had and received and rescission based on violations of the Florida Unfair Insurance Trade Practices Act ("FUITPA"): specifically, allegations . . . that the insurance agents were not properly licensed. Finding that "the Florida legislature created a private cause of action for certain FUITPA violations but" . . . not for the violations alleged by plaintiff, the Eleventh Circuit declined to "use the common law of contracts [sic] to circumvent this deliberate remedial limitation." *Buell* specifically rejected plaintiffs' argument "that the availability of a statutory remedy should be irrelevant, as Florida common law makes rescission or restitution available to protect an innocent party from the consequences of a contract whose subject matter is illegal," finding this argument ran afoul of the Florida Supreme Court's holding in *Murthy*.

*Hucke*, 160 F. Supp. 3d at 1324-25 (internal citations omitted).

*Hucke* also disagreed with *Pincus*'s conclusion that the Eleventh Circuit had misunderstood *Murphy*. *Id.* at 1325. Based on its reading of *Murphy*, which is consistent with *Buell*, the *Hucke* Court stated:

*Murphy* stands for the proposition that, "where a defendant has injured a plaintiff in a way that gives rise to a common law claim . . ., the mere fact that the defendant might also have violated a statute without any private right of action does not preclude a plaintiff from asserting its existing common law claims." However, "[n]othing in *Murphy* stands for the proposition that a plaintiff may assert a common law claim" where "Plaintiff has not alleged any injury that would exist independent of the purported statutory violations." *Buell* considered the latter situation, which *Murphy* simply did not address.

*Hucke*, 160 F. Supp. 3d at 1326 (internal citations omitted).

After its thorough analysis, *Hucke* concluded that a violation of section 560.204 could not form the basis of an unjust enrichment action because Chapter 560 did not void a transaction with an unlicensed money transmitter. *Id.* at 1327.

115431593.1

c.    *The* Cross *decision.*

Two years later, a court in the Middle District of Florida analyzed the same question of whether a violation of section 560.204 constitutes grounds upon which an unjust enrichment action can rest and specifically addressed the split between *Pincus* and *Hucke*. *Cross*, 274 F. Supp. 3d at 1293-96. *Cross* found that "*Hucke* better reconciles the case law" and further reasoned that *Silver Star* and *Buell* "used the same approach—examining the underlying statute to determine whether the agreements were enforceable." *Id.* at 1295.

Based on that approach, the court in *Cross* looked to the plain language of section 560.204 "to determine whether the statute provides any indication . . . that contracts with a money transmitter who is not properly licensed are void and illegal." *Id.* After review, the court determined section 560.204 did "not render agreements with money transmitters who are unlicensed thereunder unenforceable." *Id.* at 1296. As such, plaintiff's claim for unjust enrichment founded on the alleged violation of section 560.204 was dismissed. *Id.*

d.    *This Court should follow* Hucke *and* Cross *and dismiss.*

Here, the Court should follow *Hucke* and *Cross* because they reconcile two cases from the Eleventh Circuit. *See United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993) (stating, "the most favored means for resolving an inconsistency in circuit precedents is to determine that the inconsistency is more apparent than real. A panel of this Court is obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule."). Because *Hucke* and *Cross* reconcile two apparently competing lines of Eleventh Circuit cases, they are the opinions that should be adopted. Moreover, the rationale of *Hucke* and *Cross* should be adopted because they are the most faithful to the Supreme Court of Florida's decision in *Murphy*.

115431593.1

*Hucke* and *Cross* dictate that Pincus's claim for unjust enrichment based solely on the allegation that ATS is an unlicensed money transmitter in violation of section 560.204 should be dismissed. Section 560.204 does not provide that a transaction with an unlicensed money transmitter is illegal or void. Pincus cannot create the private right of action the legislature did not see fit to create by applying an unjust enrichment claim to allegations of a statutory violation. ATS requests that Count III be dismissed with prejudice.

> ii.     *Alternatively, even if an action for unjust enrichment could be maintained, Pincus has failed to state a claim.*

Even if the Court follows *Pincus* and allows an action for unjust enrichment to be maintained, Pincus's Complaint still fails to state a viable claim for relief.

In *State Farm Mutual Automobile Insurance Co. v. Performance Orthopaedics & Neurosurgery, LLC*, plaintiff brought claims for unjust enrichment based on the theory that it would be wrong for defendants to retain benefits they received as a result of conduct that violated certain statutes. 278 F. Supp. 3d 1307, 1329 (S.D. Fla. 2017). Defendants moved to dismiss, arguing plaintiff could not base an unjust enrichment claim on conduct that violated statutes for which there was no private cause of action. *Id.* at 1328.

Relying on *Pincus* (but without addressing *Hucke*), the court rejected that argument. *Id.* at 1328-29. The court reasoned that alleged violations of statutes that do not provide a private right of action was not fatal to the unjust enrichment claim. Nevertheless, the court ultimately dismissed the claim based on its comparison of the statutory language in *Silver Star* with the statutory language before it. *Id.* at 1330.

In *Silver Star*, the unjust enrichment claim was permitted "because the statute at issue expressly provided that a claim for an unlicensed medical provider 'is an unlawful charge and is non-compensable and unenforceable.'" *Id.* at 1330 (citations omitted). In contrast, none of the

16

statutes at issue in *Performance Orthopaedics* provided that charges in violation of those statutes were unlawful, non-compensable, or unenforceable. *Id.* Because the statutes at issue did not provide the charges were unlawful, non-compensable, or unenforceable, the court concluded the legislature did not intend for charges by companies unlicensed under the relevant statutes to be non-compensable or unenforceable. *Id.*

In other words, the court concluded that there was "no benefit conferred and accepted that would be unjust for the Defendant to retain." *Id.* Retention of a benefit, even in the face of a technical statutory violation, when the legislature did not declare that receipt of such benefit was unlawful, non-compensable, or the contract unenforceable, did not make the retention of the benefit unjust. Therefore, the court dismissed the unjust enrichment claim because the plaintiff had failed to state a claim. *Id.* So too here.

Section 560.204 provides that a person may not engage in the activity of a money transmitter without obtaining a license. Fla. Stat. § 560.204(1). But, like the statutes in *Performance Orthopaedics*, Chapter 560 does not provide that fees charged by an unlicensed money transmitter are unlawful, non-compensable, or unenforceable merely due to an alleged regulatory licensure violation. Pincus has not alleged that he did not receive the benefit of his bargain after he voluntarily elected to pay his civil fine online. There is nothing unjust, then, about ATS retaining the fee Pincus paid for his civil fine to be processed online. *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1334-35 (S.D. Fla. 2007) (dismissing unjust enrichment claim because complaint failed to allege facts showing plaintiffs did not receive the benefit of the bargain). Accordingly, as did the court in *Performance Orthopaedics*, this Court should dismiss the unjust enrichment claim because there is no indication the legislature intended charges by an unlicensed money transmitter for services actually rendered to be non-compensable or

unenforceable merely because the money transmitter was unlicensed. Pincus has not stated a viable unjust enrichment claim compelling a refund of his fee.

    **WHEREFORE**, Defendant American Traffic Solutions, Inc. respectfully requests that the Court dismiss the Complaint with prejudice.

    Dated: August 3, 2018.

                                            Respectfully submitted,

                                            **CARLTON FIELDS JORDEN BURT, P.A.**

                                            /s/ *Kevin P. McCoy*
                                            Kevin P. McCoy
                                            Florida Bar No. 36225
                                            kmccoy@carltonfields.com
                                            David R. Wright
                                            Florida Bar No. 119453
                                            dwright@carltonfields.com
                                            Carlton Fields Jorden Burt, P.A.
                                            4221 W. Boy Scout Blvd., Ste. 1000
                                            Tampa, FL  33607
                                            Tel: (813) 223-7000
                                            Fax: (813) 229-4133

                                            *Attorneys for Defendant American Traffic Solutions, Inc.*

115431593.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

August 3, 2018, on all counsel or parties of record on the Service List below.

*/s/ Kevin P. McCoy*
Kevin P. McCoy

## SERVICE LIST

Bret L. Lusskin, Esq.
Florida Bar No. 28069
blusskin@lusskinlaw.com
THE TICKET CRICKET
20803 Biscayne Blvd., Ste. 302
Aventura, FL 33180
Telephone: 954-454-5841
Fax: 954-454-5844

*Attorney for Plaintiff Steven J. Pincus*

Keith J. Keogh, Esq.
Florida Bar No. 126335
keith@keoghlaw.com
KEOGH LAW, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
Telephone: 312-726-1092
Fax: 312-726-1093

*Attorney for Plaintiff Steven J. Pincus*

Scott D. Owens, Esq.
Florida Bar No. 597651
scott@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, FL 33019
Telephone: (954) 589-0588
Fax: (954) 337-0666

*Attorney for Plaintiff Steven J. Pincus*

19

115431593.1