UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 18-cv-80864-MIDDLEBROOKS

STEVEN J. PINCUS, an individual, on behalf
of himself and all others similarly situated,

    Plaintiff,

v.

AMERICAN TRAFFIC SOLUTIONS, INC.,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendant American Traffic Solutions, Inc.'s ("Defendant ATS") Motion to Dismiss, filed on August 3, 2018. (DE 12). Plaintiff Steven J. Pincus ("Plaintiff") filed a response on August 17, 2018 (DE 15), to which Defendant replied on August 24, 2018 (DE 18). For the reasons set forth below, Defendant's Motion is granted.

## BACKGROUND

Defendant ATS is the exclusive vendor for the City of North Miami Beach's red light photo-enforcement program. (DE 1 ¶ 17). Defendant installed and maintains the equipment, monitors intersections, issues and mails citations, and processes payments. (*Id.*). The relationship between the City of North Miami Beach and Defendant ATS is governed by a series of contracts. (DE 1-1). The second amendment to the agreement between the City of North Miami Beach and Defendant ATS, signed in August of 2013, authorizes ATS "to charge, collect and retain a convenience fee of up to 5% of the total dollar amount of each electronic payment processed. Such convenience fees are paid by the violator." (DE 1-1 at 102).

In early 2018, Plaintiff received by mail a Notice of Violation from the City of North Miami Beach, which stated that on February 17, 2018, Plaintiff ran a red light. (DE 1-2). The Notice of Violation stated that Plaintiff was required to pay a civil penalty in the amount of $158.00. (*Id.*). Plaintiff states that he paid the penalty over the Internet, at which time Plaintiff was required to pay a "convenience fee" of $7.90, an amount equal to five percent of his $158.00 civil penalty. (DE 1 ¶ 24). Defendant paid the civil penalty by an online credit card payment and was assessed an additional $7.90 "convenience fee" for doing so. (DE 1 ¶ 28). Plaintiff subsequently filed this putative class action, alleging three counts of unjust enrichment for violation of Fla. Stat §§ 316.0083(b)4, 318.121, and 560.204.

Defendant ATS now seeks dismissal on the basis of Rule 12(b)(1), arguing that Plaintiff can show no injury traceable to Defendant's conduct. Alternatively, Defendant seeks dismissal under Rule 12(b)(6) on the grounds that Plaintiff fails to state claims for unjust enrichment.

## **LEGAL STANDARD**

### 1. Lack of Subject Matter Jurisdiction

Article III of the Constitution limits the power of the federal judiciary to the resolution of "Cases" and "Controversies." U.S. Const. art. III. § 2, cl. 1. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order demonstrate Article III standing, a plaintiff bears the burden of establishing an injury in fact, causation, and redressibility. *Id.* at 560–61. At the motion to dismiss phase, the Plaintiffs can satisfy their burden by pleading general allegations about the Defendants' conduct that would entitle them to stand before the Court. *Id.* at 561; *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 (11th Cir. 2004) (citation omitted).

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n. 42 (11th Cir. 1991). A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice. *Crotwell v. Hockman–Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984).

When a complaint is subject to a "facial attack," as opposed to a "factual attack," the allegations in the complaint are taken as true for the purposes of the motion. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

### 2. Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). To satisfy the pleading standard of Rule 8(a)(2), as articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe a plaintiff's complaint in the light most favorable to the plaintiff and take the complaint's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Pleadings that "are no more than conclusions[] are not

3

entitled to the assumption of truth," however. *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555–56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3. Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

## DISCUSSION

### 1. STANDING

The Notice of Violation appended to the Complaint provides three options for payment in a section titled "Payment Instructions," which reads in full:

> **ONLINE PAYMENT**: The fastest and easiest way to pay your $158.00 penalty is online. Go to www.ViolationInfo.com and log on with your Notice # and PIN shown in the red box on the front of this notice. Click the Pay button. There is a convenience / service fee for this service.
> **PAYMENT BY PHONE**: Call toll free 1-866-225-8875 available 24 hours a day, 7 days a week. There is a convenience / service fee for this service.
> **PAYMENT BY MAIL**: Mail your check or money order (payable to the City of North Miami Beach) in the enclosed envelope with the coupon printed a the bottom of the reverse side of this Notice. PLEASE DO NOT MAIL CASH. Be sure to put the Notice # (see reverse) on the face of your payment. Payment must be postmarked on or before the due date.
> **PAYMENT IN PERSON**: No walk-in payments will be accepted

(DE 1-2 at 3).

Plaintiff chose to pay his civil violation penalty with an online payment. (DE 1 ¶ 28). Pursuant to the Payment Instructions in the Notice of Violation, Plaintiff could have avoided an

4

additional fee if he had chosen to pay his penalty with check or money order mailed to the "City of North Miami Beach Payment Processing Center," the address for which is listed as a PO Box in Cincinnati, Ohio. Defendant argues that, because Plaintiff could have chosen to mail his penalty payment rather than submit it online, Plaintiff inflicted the alleged injury upon himself, and therefore cannot demonstrate the causation element of standing.

Plaintiff argues that the causation element is satisfied. He argues that the relationship between Defendant and ATS is not a typical contractual relationship, whereby one party may agree to the conditions of another in satisfaction of an obligation, but rather a *compulsory* relationship, in which one party accuses the other of illegal conduct and compels payment of a fine under threat of prosecution. Plaintiff argues that, since a policeman or the city itself would not be able to impose a surcharge not authorized by law, nor can Defendant. Plaintiff further argues that the "convenience fee" is not, in fact, a convenience fee, which he defines as charges "levied for the privilege of paying for a product or service using an alternative payment channel, most often to recoup frictional costs incurred by the merchant." (DE 15 at 8). Noting that both cash payments and in-person payments are prohibited, Plaintiff argues that Defendant cannot unilaterally dictate which methods are acceptable and then add surcharges to some of them simply because it is profitable to do so.

Defendant operates traffic enforcement systems across the nation, and because it has raised the ire of many a driver, this Court does not make its determination of Plaintiff's standing upon a blank slate. Plaintiff argues that this Court should follow Judge Moreno's determination in *Parker v. Am. Traffic Sols., Inc.*, No. 14-CIV-24010, 2015 WL 4755175, at *2 (S.D. Fla. Aug. 10, 2015). In that case, drivers who received tickets for red light violations challenged several cities' use of third-party traffic enforcement vendors, relying on the decision in *City of*

5

*Hollywood v. Arem*, which held that Florida law prohibits the city from delegating to private vendors the ability to issue uniform traffic citations. 154 So. 3d 359, 365 (Fla. Dist. Ct. App. 2014). Judge Moreno determined that the *Parker* plaintiffs' payment of the fines issued by ATS did not defeat their standing, writing that the plaintiffs suffered financial injury when they paid fines that were "void *ab initio*" because, according to the *Arem* decision, they were issued in violation of Florida law. 2015 WL 4755175, at *2. Subsequently, however, the Florida Supreme Court largely overruled the *Arem* decision, explicitly holding that Florida law authorizes third parties to "review information from red light cameras for any purpose short of making the probable cause determination as to whether a traffic infraction was committed." *Jimenez v. State*, 246 So. 3d 219, 230 (Fla. 2018), *reh'g denied*, No. SC16-1976, 2018 WL 3238922 (Fla. July 3, 2018). In light of the Florida Supreme Court's decision in *Jimenez*, Judge Moreno determined that the issue before the court was resolved and dismissed the case. Case No. 14-CIV-24010, Docket Entry 405 (S.D. Fla. July 11, 2018).

In *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 221 (E.D.N.Y.), aff'd, 630 F. App'x 61 (2d Cir. 2015), the court found that a plaintiff's voluntary payment of her civil penalty fine and the attendant fee did not defeat her standing to assert § 1983 claims and unjust enrichment claims. With respect to the causation element, the *Leder* court emphasized that Article III causation requires only that injury be "fairly traceable" to the defendant's conduct—a defendant's conduct need not be the direct cause of an injury, nor even the *proximate* cause. *Id.* (citing *Lujan*, 504 U.S. at 590; *Rothstein v. UBS AG,* 708 F.3d 82, 92 (2d Cir. 2013)). In *Jadeja v. Redflex Traffic Sys., Inc. et al.*, 764 F. Supp. 2d 1192, 1195 (N.D. Cal. 2011), conversely, the court found that plaintiff did not have standing to challenge the allegedly unlawful business practices that led to the contract between the city and the operator because it was ultimately the

6

City of Menlo Park that "independently decided to issue him a citation." *Id.* at 1196. *Jadeja* seems to suggest that the causation calculus is affected by the relative roles played by the issuing municipality and the entity that collects the fines.[1]

As interpreted by the Supreme Court in *Lujan*, Article III requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" 504 U.S. at 560 (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). A showing that an injury is "fairly traceable" requires less than a showing of "proximate cause." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)). "Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (*citing Focus on the Family*, 344 F.3d at 1273). S*ee also Bennett v. Spear*, 520 U.S. 154, 169 (1997) (noting that the causation requirement of Article III is "relatively modest" at the pleading stage).

I find that Plaintiff's decision to pay his fee online, thereby incurring the contested "convenience fee," does not defeat his standing to bring this action. Plaintiff is correct insofar as the Notice of Violation does not create a typical contractual relationship between the recipient and ATS: upon receipt of the Notice, a recipient may either a) pay the $158.00 fine, b) submit an affidavit stating that a statutory exemption applies, such as passing through an intersection to

---

[1] In *Bell v. Am. Traffic Sols., Inc.*, 371 F. App'x 488, 489 (5th Cir. 2010), an additional case involving Defendant, after the district court dismissed the action on a Rule 12(b)(6) motion, the Fifth Circuit vacated the dismissal for failure to state a claim but affirmed the dismissal on the basis of standing. The Fifth Circuit rejected arguments that standing was proper because 1) appellants' traffic violations would not have been discovered were it not for ATS; 2) appellants injured when their traffic violations were proven using of allegedly illegally obtained evidence; and 3) the argument that ATS's collection of evidence without a license injured appellants' privacy interests. *Id.* at 489–91. None of these arguments are raised in the current dispute.

7

yield right of way to an emergency vehicle, or c) request a hearing, at which, if a Local Hearing Officer determine an infraction occurred, the recipient will be responsible for an administrative fee of up to $250.00 in addition to the $158.00 fine. (DE 1-2 at 3). Failure to take one of these actions by the listed due date results in the issuance of a Uniform Traffic Citation, and the Notice warns that "[f]ailure to pay, submit an affidavit, or request a hearing on the UTC could result in your driving privileges being suspended." (*Id.*).

Plaintiff's actions were constrained by the Notice of Violation to the extent that his decision to pay online, as opposed to by mail or by phone, cannot be considered the type of "voluntary" conduct that would defeat the causation element of standing. While Plaintiff challenges only the fee levied, unlike the plaintiffs in *Parker* and *Leder*, all of whom challenged their fines as a whole, these cases are still instructive. In *Parker*, Judge Moreno found that plaintiffs had standing against the both corporate and local government defendants where the fee that the plaintiffs paid, rather than contested, was alleged to be illegal under Florida law. The *Leder* court found that the operator's indirect role in the payment was enough for standing.

I find that Plaintiff's injury was, at least indirectly, caused by a Defendant's actions. Because even a showing of indirect causation is sufficient for Article III, *see Resnick*, 693 F.3d at 1324, I find that Plaintiff has properly demonstrated standing to sue. The analysis now turns to Defendant's arguments for dismissal under Rule 12(b)(6).

## 2. UNJUST ENRICHMENT

Plaintiff alleges that Defendant's collection of a "convenience fee" violates three provisions of Florida law: Fla. Stat. §§ 316.0083(1)(b)4, 318.121, and 560.204. Plaintiff argues that the collection of a fee in violation of the law constitutes unjust enrichment.

In Florida, the elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994) (citing *Henry M. Butler Inc. v. Trizec Properties Inc.*, 524 So.2d 710 (Fla. Dist. Ct. App. 1988)).

### A. Fla. Stat. § 316.0083

Section 316.0083 of the Florida Statutes, also known as the Mark Wandall Traffic Safety Act, was passed by the Florida Legislature in 2010 and amended most recently in 2013. The section of the act on which Plaintiff bases his first unjust enrichment claim reads, in its entirety, as follows:

> An individual may not receive a commission from any revenue collected from violations detected through the use of a traffic infraction detector. A manufacturer or vendor may not receive a fee or remuneration based upon the number of violations detected through the use of a traffic infraction detector.

§ 316.0083(1)(b)4. Plaintiff states in his Complaint that the five percent "convenience fee" constitutes a "commission."[2] Defendant appears to argue that the section should be construed not as two separate prohibitions—one on commissions *and* one on fees based on the number of violations—but as a single proscription on monetary awards that increase as the number of violations detected rises. Defendant notes that its fee does not increase as the number of violations rises, as specified in its contract with the City of North Miami Beach, whereby Defendant is paid a flat fee for each camera it installs in the City. Defendant also argues that the contested convenience fee is not levied universally, but is only charged only to those whose

---

[2] Plaintiff alleges in his Complaint that the fee also impermissibly constitutes a "fee or remuneration based upon the number of violations detected," in violation of the second sentence of § 316.0083(1)(b)4, (DE 1 ¶ 42), but his Response expressly waives this argument. (DE 15 at 15).

9

violations are detected, who are sent a Notice of Violation, and who choose not to mail their payment.

Neither party cites, nor is the Court aware of, other cases that analyze the statute's meaning. But this Court is quite able to do so on its own. In Florida, it is well settled among the principles of statutory construction that "[i]f the statute is plain and unambiguous and admits of but one meaning, the courts in construing it will not be justified in departing from the plain and natural language employed by the Legislature." *Hous. Opportunities Project v. SPV Realty, LC*, 212 So. 3d 419, 420 (Fla. Dist. Ct. App. 2016) quoting *Gough v. State ex rel. Sauls*, 55 So.2d 111, 116 (Fla. 1951). "When the language of a statute is clear and unambiguous, the statute must be given its plain and ordinary meaning." *Metropolitan Dade County v. Milton*, 707 So.2d 913, 915 (Fla. Dist. Ct. App. 1998).

As a preliminary matter, I reject Defendant's contention that the first sentence must be read out of the statute. Section 316.0083(1)(b)4 clearly and unambiguously prohibits receipt of "a commission from any revenue collected from violations detected through the use of a traffic infraction detector." But Defendant has not violated this prohibition by its selective levy of a convenience fee because no commission was taken from Plaintiff's penalty payment.

Plaintiff paid a penalty of $158.00, as authorized by a different section of the Mark Wandall Traffic Safety Act. § 316.0083(1)(b)1.a. Plaintiff does not allege that any amount of the $158.00 he paid was received by Defendant as a "commission." Defendant's convenience fee operates as a *surcharge*, rather than a commission derived from the initial payment.[3]

---

[3] "Commission" is not defined by the statute, § 316.003, so the plain meaning of the term must be given effect. Oxford English Dictionary defines "commission" as "[a] sum, typically a set percentage of the value involved, paid to an agent in a commercial transaction." OXFORD ENGLISH DICTIONARY, https://en.oxforddictionaries.com/definition/commission (last visited Jan. 11, 2019). Merriam-Webster contains a similar definition: "[A] fee paid to an agent or

10

Plaintiff even alleges in the complaint that the convenience fee appeared on his credit card statement as a separate charge. (DE 1 ¶ 28). The Court cannot consider immaterial the distinction between commissions and a surcharges: unlike § 316.0083(1)(b)4, the Court notes that in Fla. Stat § 318.121, which also deals with the assessment of traffic penalties and which is analyzed below, the Florida Legislature chose to specifically prohibit surcharges, along with other types of additional costs.

Defendant's surcharge may violate the *spirit* of the law, but it does not violate the *letter* of the law.[4] Accordingly, Plaintiff has not pled a claim for unjust enrichment based on Fla. Stat. § 316.0083(1)(b)4 and Count I of Plaintiff's Complaint must be dismissed.

### B. Fla. Stat § 318.121

In Count II of the Complaint, Plaintiff alleges Defendant's violation of Fla. Stat § 318.121 constitutes unjust enrichment. This section states, in full:

> Notwithstanding any general or special law, or municipal or county ordinance, additional fees, fines, surcharges, or costs other than the court costs and surcharges assessed under s. 318.18(11), (13), (18), (19), and (22) may not be added to the civil traffic penalties assessed under this chapter.

§ 318.121. Defendant points out that the statute limits only additional fines, fees, surcharges or costs that are added to the civil traffic penalties assessed under Chapter 318 of the Florida Statutes and argues that Plaintiff cannot state a claim for unjust enrichment under § 318.121 because the civil traffic penalty he paid was not assessed under Chapter 318. Defendant argues that even if § 318.121 applies to Plaintiff's civil traffic penalty, it does not apply to the

---

employee for transacting a piece of business or performing a service. [*E*]*specially*: a percentage of the money received from a total paid to the agent responsible for the business." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/commission (last visited Jan. 11, 2019) (emphasis in original).

[4] Because Defendant's "convenience fees" do not constitute a commission on revenue collected, in violation of the statute, I do not reach the question of whether Defendant can be considered "[a]n individual" subject to the statute's prohibition on such conduct.

11

"convenience fee" because the section is intended to bar compulsory government-imposed fines and fees, not the type of fee in this case, which was collected by a nongovernmental entity and that Plaintiff "imposed on himself."

Plaintiff argues that "Chapter 316 sets forth the rules of the road pertaining to photo-enforced red lights, while Chapter 318 contains the provisions relating to infractions and civil penalties." (DE 15 at 11). Specifically, Plaintiff points to §§ 318.18(15)(a)2-(a)3 and 318.18(15)(a)3. Both impose a fee of $158.00 when a driver has failed to stop at a traffic signal; subsection 15(a)2 applies when "enforced by the department's traffic infraction enforcement officer" and subsection 15(a)3 applies "when enforced by a county's or municipality's traffic infraction enforcement officer." These subsections also direct the distribution of the collected $158.00 between the collecting municipality, the Florida General Revenue Fund, and so on.

While Chapter 318 does contain a reference to the penalty levied against Plaintiff, I do not find that the penalty was "assessed under" Chapter 318. The entire statutory scheme on which Defendant's enforcement operation rests is contained in Chapter 316. Section 316.008(8) authorizes counties and municipalities to use "traffic infraction detectors" to enforce §§ 316.074(1) and § 316.075(1)(c), which mandate obedience to traffic control devices. Section 316.640(1)(b)3 permits government entities to authorize "traffic infraction enforcement officers," and § 316.0083(1)(a) authorizes these officers to issue citations for traffic law violations. Section 316.0083(1)(b)1.a sets out the requirements of a Notification of Violation, such as the one Plaintiff received, and § 316.0083(1)(b)3.b establishes the $158.00 fine "for a violation of s. 316.074(1) or s. 316.075(1)(c)1 when a driver failed to stop at a traffic signal if enforcement is by a county or municipal traffic infraction enforcement officer."

The fine paid by Plaintiff can only be considered to have been assessed under Chapter 316. Sections 318.18(15)(a)2 and (15)(a)3, relied upon by Plaintiff, constitute at most, a parallel cross-reference to the civil traffic penalty assessed under Chapter 316. Plaintiff thus fails to state a claim for unjust enrichment for violation of § 318.121. Defendant's Motion must be granted as to Count II of the Complaint.

### C. Fla. Stat. § 560.204

Section 560.204 of the Florida Statutes, in pertinent part, prohibits persons from engaging in "the selling or issuing of payment instruments or in the activity of a money transmitter, for compensation." § 560.204(1). The Parties do not dispute that § 560.204 lacks a private right of action. Defendant argues that Plaintiff, as a private person, cannot maintain an action for unjust enrichment under § 560.204. Alternately, Defendant argues that failure to obtain proper licensing as a money transmitter does not itself constitute a basis for an unjust enrichment claim where, as here, the plaintiff received the benefit of his bargain.

As to the question of whether § 560.204 can maintain an action for unjust enrichment, two seemingly contradictory decisions by the Eleventh Circuit have resulted in disagreement among lower courts.

The first case, *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 908 (11th Cir. 2008), was a challenge to an insurance company's alleged engagement in a deceptive trade practice prohibited by the Florida Unfair Insurance Trade Practices Act ("FUITPA"). Fla. Stat. §§ 626.9521, 626.9541(1)(z). Despite the facts that FUITPA provided no cause of action, that there was no other statutory remedy in Florida for someone who buys insurance from an unlicensed agent, and that Fla. Stat. § 626.141 specifically provides that an otherwise-valid insurance policy is not rendered invalid because it was procured by an unlicensed agent, the

13

*Buell* plaintiffs asserted common law claims for money had and received[5] and recission of their insurance contracts. 267 F. App'x at 909. In an unpublished opinion, the Eleventh Circuit affirmed the trial court's determination that "plaintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions of FUITPA by asserting common law claims based on such violations." *Id.*

In the second case, *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579 (11th Cir. 2013), the Eleventh Circuit analyzed a similar situation and reached the opposite conclusion. An insurance company, in connection with treatment of an insured, paid $151,000 to an unlicensed chiropractic clinic and owed an additional $86,000. *Id.* at 582. The insurance company brought an unjust enrichment claim premised on the clinic's violation of the Florida Health Care Clinic Act, which required the clinic to be licensed and which stated that "[a]ll charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed . . . are unlawful charges, and therefore are noncompensable and unenforceable." §§ 400.991, 400.9935(3). The *Silver Star* court noted that unjust enrichment is a cause of action well established in Florida and held that "[i]f an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment." 739 F.3d at 584 (citing *Standifer v. Metro. Dade Cnty.*, 519 So.2d 53, 54 (Fla. Dist. Ct. App. 1988)).

*Buell* and *Silver Star* resulted in a split within the Southern District of Florida. In *Pincus v. Speedpay, Inc.*, 161 F. Supp. 3d 1150, 1155 (S.D. Fla. 2015) (Marra, J.), where plaintiffs brought unjust enrichment claims premised on violations of Fla. Stat §§ 501.01171 and 560.204,

---

[5] In Florida, the elements of restitution, unjust enrichment, and money had and received are the same. *Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F.Supp.2d 1356, 1384 (S.D. Fla. 2010).

14

the court interpreted *Buell* and *Silver Star* to be in conflict and resolved the apparent conflict between the in favor of the latter:

> This Court chooses to follow the rationale of the published decision in *Silver Star* over that of the unpublished *Buell* opinion. The *Buell* opinion distinguished *Davis v. Travelers Indemnity Co. of Am.*, 800 F.2d 1050 (11th Cir. 1986), which held that common law remedies may be appropriate for violations of the FUITPA. The court in *Buell* relied on a post-*Davis* decision of the Florida Supreme Court, *Murthy v. Sinha Corp.*, 644 So.2d 983, 985 (Fla. 1994), and stated that the principle of Florida law relied upon by the *Davis* court had been repudiated. Thus, *Davis* was no longer binding authority, and under the holding of *Murthy*, legislative intent is paramount in determining whether a remedy for a statutory violation is actionable.
>
> The *Buell* Court, however, overlooked the fact that while the Florida Supreme Court in *Murthy* ruled that the statute in question did not create a cause of action, it also stated that "[w]e agree that an owner may recover from a negligent qualifying agent, but only under a common law theory of negligence." *Murthy*, 644 So.2d at 986–87. Hence, *Murthy* did not preclude other available civil causes of action that might already exist. *Murthy* simply stated that the statute did not create the remedy.

161 F. Supp. 3d at 1155–56. Judge Marra concluded that plaintiff could proceed with common law causes of action premised on statutory violations, even when the statutes do not create private rights of action, provided that the elements of the common law claims are properly stated. *Id.* at 1156.

Conversely, in *Hucke v. Kubra Data Transfer, Corp.*, Judge Rosenberg departed from Judge Marra's interpretation of the precedent and agreed "with the *Buell* court's finding that allowing broad enforcement of statutes via the common law would run afoul of the approach taken by the Florida Supreme Court in *Murthy*." 160 F.Supp.3d 1320, 1235 (S.D. Fla. 2015). Judge Rosenberg concluded that where a plaintiff alleges no injury apart from violation of the statute, "there must be 'something more,' in terms of statutory language or public policy, to allow the plaintiff to bring a restitution-based cause of action based solely on violation of the

15

statute." *Id.* at 1326. The court then searched for, but did not find, the requisite "something more" that would permit enforcement of § 560.204(1) via the common law.

Faced with another unjust enrichment challenge premised on a violation of § 560.204, a judge for the Middle District of Florida wrote the following regarding the divergent outcomes in *Pincus* and *Hucke*:

> The *Hucke* court determined that *Silver Star* and *Buell* could be reconciled, noting that, while *Silver Star* did not explicitly state that it was examining the statute to determine whether the underlying agreement was enforceable, it did so. Further, both the district court in *Hucke* and the magistrate judge who issued the underlying Report and Recommendation undertook a thorough examination of Florida case law; that "case law suggest[ed] 'that something more than just the violation of a statute'" was required to bring a common law cause of action in this type of situation. Specifically, the court noted "that there must be some indication that the regulatory violation also renders the underlying transaction void or otherwise creates grounds for private restitution.... That is, some indication in the subject regulatory statute that opens the door to pursuing either restitution or declaratory judgment."
>
> Although the Court acknowledges that this is a murky area of law where intelligent minds can, and obviously have, disagreed, it finds that the approach taken in *Hucke* better reconciles the case law. As the *Hucke* court found, it appears to this Court that the *Silver Star* and *Buell* opinions used the same approach—examining the underlying statute to determine whether the agreements were enforceable.

*Cross v. Point & Pay* 274 F. Supp. 3d 1289, 1294 (M.D. Fla. 2017) (Mendoza, J.) (internal citations omitted.

Upon careful analysis of the cases, I do not find *Silver Star* and *Buell* to be in conflict. Where the statutory scheme in question indicates intent to restrict a private right of action, as in *Buell*, the Eleventh Circuit instructs courts not to permit plaintiffs to "evade" the Legislature's decision. Conversely, where the statutory scheme opens a door for plaintiffs to assert their rights, such in *Silver Star*, where the underlying statute stated that charges by unlicensed clinics were

16

"unlawful" and "unenforceable," the Eleventh Circuit instructs courts to allow common law claims premised on statutory violations.

Accordingly, in the interest of preserving the Florida Legislature's power to grant or withhold private rights of action as it sees fit, I will analyze 560.204(1) to determine whether the statute suggests the Legislature intended to create an opportunity for plaintiffs to privately vindicate their statutory rights.

As Judge Rosenberg concluded, however, § 560.204(1) contains no indication that the regulatory violation also renders the underlying transaction void. Nor does it create a basis for private restitution, allowing only a possibility of administrative enforcement actions by the Financial Services Commission's Office of Financial Regulation, which enforces the statute. *See also* Fla. Stat. § 560.116 ("Any person having reason to believe that a provision of this chapter is being violated, has been violated, or is about to be violated, may file a complaint *with the office* setting forth the details of the alleged violation.") (emphasis added). I agree with Judge Rosenberg's determination in *Hucke* that § 560.204(1) cannot serve as the basis for a common law unjust enrichment claim, as this would essentially allow an end-run around the Legislature's apparent intent not to provide a statutory cause of action. 160 F. Supp. 3d at 1327.

Accordingly, Count III of Plaintiff's claim must also be dismissed for failure to state a claim under Rule 12(b)(6).

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that

(1) Defendant's Motion to Dismiss (DE 9) is **GRANTED**.

(2) Counts I, II, and III of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**.

(3) The Clerk of Court is directed to **CLOSE THIS CASE** and **DENY** all pending motions **AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this __11__ day of January, 2019.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record